## No. 15,215.

ROSANE *v.* SENGER ET AL.

(149 P. [2d] 372)

Decided May 1, 1944. Rehearing denied June 5, 1944.

364

Mr. ALBERT B. LOGAN, for plaintiff in error.

Mr. PAUL M. CLARK, Mr. FRED FARRAR, Mr. ELMER P. COGBURN, for defendants in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties occupy the same relative position in this

court as below. Plaintiff in error is hereinafter referred to as plaintiff and defendants in error as defendants, or Senger and Ireland as the doctors, the Colorado Fuel and Iron Company as the hospital, and Stratton as the nurse.

Plaintiff brought this action against defendants for $37,152 actual and $5,000 exemplary damages, arising from alleged negligence in the performance of an abdominal operation. Motions to dismiss (demurrers) were sustained and she elected to stand. To review the judgment entered accordingly she prosecutes this writ. The question raised by the specifications is, Did this complaint state a good cause of action against defendants or any of them?

It is alleged that the Colorado Fuel and Iron Company owned and conducted the hospital and had in its employ the doctors and the nurse; that the operation in question was advised, supervised and performed by the doctors; and that the nurse was "in charge of the operating room * * * and was then and there engaged in assisting said surgeons in the performance of said operation." Hence we have here three distinct and separate relationships to the plaintiff, that of the nurse, that of the hospital, and that of the doctors. 1. The nurse moved to dismiss: (a) For failure to state a cause of action; and (b) for the bar of the six-year statute of limitations. 2. The hospital moved to dismiss for the same reasons. 3. The doctors moved to dismiss because of the bar of the two-year statute of limitations.

1. The motion of the nurse was overruled as to the first ground and sustained as to the second. We disregard the second and hold it should have been sustained as to the first. We think this is self evident. It is not alleged that she was derelict as to any special duty with which she was charged, or that she was charged with any. She was simply "assisting said surgeons," whatever that may mean, and the presumption is that she was directed by them. It is not alleged that

she was engaged because of any special skill possessed by her, or that she possessed any. Her negligence, if any, was that of the doctors or the hospital. In fact the language charging her might, with almost equal propriety, have been applied to a janitor. No cause of action is stated against her.

2. The motion of the hospital was sustained as to both grounds. A hospital, a corporation as here, can not be licensed to, and can not, practice medicine and surgery. The relation between doctor and patient is personal. That a hospital employs doctors on its staff does not make it liable for the discharge of their professional duty since it is powerless, under the law, to command or forbid any act by them in the practice of their profession. Unless it employs those whose want of skill is known, or should be known, to it, or by some special conduct or neglect makes itself responsible for their malpractice (and no such allegation here appears) it cannot be held liable therefor. Hence the motion of the hospital was properly sustained as to the first ground thereof. The second becomes immaterial. *Stacy v. Williams,* 253 Ky. 353, 69 S.W. (2d) 697; *Schloendorff v. Society of N. Y. Hospital,* 211 N.Y. 125, 105 N.E. 92; *Black v. Fischer,* 30 Ga. App. 109, 117 S.E. 103; *People v. Painless Parker,* 85 Colo. 304, 275 Pac. 928.

3. The motion of the doctors was sustained. The operation in question was performed July 28, 1930. The negligence charged is, "They inserted a large gauze pad in the incision * * * and closed the incision * * * leaving said gauze pad inside of the incision and body of the plaintiff." This action was started December 26, 1941. It is alleged that in the interim plaintiff, in order to ascertain the cause of her constant pain and suffering, consulted and was "treated by various surgeons and physicians, and when her condition became extremely grave in Norfolk, Nebraska, in October, A. D. 1940, X-ray and fluoroscope examinations were made under the direction of Dr. A. E. Coletti, but same failed

to disclose the presence of said gauze pad and an exploratory operation was indicated; that on October 25, 1940, a laparotomy was performed by Drs. A. J. Schwedhelm and A. E. Coletti, and the said gauze pad was discovered and removed, this being the first notice to plaintiff of the negligence, carelessness and recklessness of the defendants."

The statute upon which the doctors rely, so far as here applicable, reads: "No person shall be permitted to maintain an action * * * to recover damages from any person licensed to practice medicine * * * on account of the alleged negligence of such person in the practice of the profession * * * unless such action be instituted within two years after such cause of action accrued." '35 C.S.A., c. 102, §7. The briefs, on both sides, present much argument and many authorities on the question of whether it is the negligent act or the resulting damage which fixes the date when the statute begins to run. We ignore these because that is not the point. The question here is, Does justifiable delay, due to plaintiff's ignorance of the cause of a known injury, stop the running of the statute when plaintiff has used every reasonable effort to ascertain that cause and been frustrated solely by defendants' concealment? In other words under such circumstances, when did the cause of action accrue?

That there are certain recognized exceptions to the strict and literal construction of such statutes as that here in question, necessarily construed into them by the demands of simple justice and the necessity for evading constitutional conflicts, is well known to the profession. For instance, it would be outrageous to deprive one of his right to sue when a superior law forbade suit, or require him to sue when good faith to his debtor forbade action. *Brooks v. Bates,* 7 Colo. 576, 4 Pac. 1069; *County Com'rs v. Flanagan,* 21 Colo. App. 467, 122 Pac. 801. Do the facts before us constitute such an exception?

Cases involving the applicability of statutes similar to that here in question are numerous and not a few of them were actions against physicians for leaving foreign substance in closed incisions. Their perusal would almost lead to the conclusion that certain surgeons use such incisions as waste baskets. In most of these cases the exceptions are repudiated and the statute strictly construed. A shocking result of this doctrine is well illustrated by a New York case. There the surgeon performed an operation for appendicitis and left his arterial forceps in the wound when it was closed. Despite allegations that he knew of his negligence, but failed to disclose it, and that plaintiff did everything within reason to discover the trouble and succeeded only when an X-ray revealed it and a hasty operation was performed to save life, a two year statute had run and its bar was sustained. We cite the case principally, however, to say that we agree with Justice O'Malley who dissented. *Conklin v. Draper,* 229 N.Y. App. Div. 227, 254 N. Y. 620, 173 N.E. 892.

A notable "gauze pad case" comes from Alabama. It was contended there that the statute was tolled since the cause of action was concealed by the negligence hence the malfeasance should be treated as a fraudulent concealment. The strict construction rule was applied but the opinion does recognize the rule that one may not take advantage of his own wrong. A careful reading of the case discloses that the real basis of the decision was the absence of allegations of diligence on the part of the plaintiff. *Hudson v. Moore,* 239 Ala. 130, 194 So. 147.

 It is generally held that *fraudulent* concealment stops the running of the statute. 74 A.L.R., p. 1320. It is said this is necessary that one be not permitted to take advantage of his own wrong. *Reynolds v. Hennessy,* 17 R.I. 169, 23 Atl. 639. But in such case the defendant has committed two wrongs, the original negligence and the fraudulent concealment. Why permit him

to take advantage of the first and apply the rule only to the second? We are not impressed with the reasoning which supports the materiality of fraud. The statute is enacted for the purpose of promoting justice, discouraging unnecessary delay and forestalling the prosecution of stale claims, not for the benefit of the negligent. It should not be construed to defeat justice. The negligence is equally damaging and the victim equally helpless regardless of the motive for concealment.

This statute has exactly the same effect as would a contract of employment which provided that no action could be maintained against the doctors unless brought within two years from the date of the performance of the operation; that is on a par with a contract of insurance providing no recovery can be had unless notice be given within a specified time. Any excuse which would defeat such express contracts is equally effective to toll the statute and it is well settled in this jurisdiction that impossibility to give notice is such. *London Guarantee & Accident Co. v. Officer,* 78 Colo. 441, 242 Pac. 989; *United States Cas. Co. v. Hanson,* 20 Colo. App. 393, 79 Pac. 176.

Counsel for the doctors say we have held in a workmen's compensation case that ignorance of death did not toll the statute and that ruling should be regarded as controlling here. There no facts appeared upon which any recognized exception could be based and we merely announced and followed the general rule. The case is not in point. *Miller v. Industrial Com.,* 106 Colo. 364, 105 P. (2d) 404.

The Court of Appeals of Maryland, after reviewing with apparent acquiescence various authorities which deny the exception, or limit it to other grounds, appears finally unable to escape the logic and justice of the rule that plaintiff's lack of knowledge, due to no lack of diligence on his part, but solely to defendant's concealment, tolls the statute, and holds flatly that "the statute began to run from the time of the discovery of the al-

leged injury." *Hahn v. Claybrook,* 130 Md. 179, 100 Atl. 83.

It has been held that while generally, plaintiff's ignorance of the wrong committed can not be considered in determining when the statute begins to run, an exception to this rule is made in cases of the concealment of the cause of action. There the bar of the statute does not operate until discovery, and it is said, "This proposition is so fundamental that no authorities need be cited." *Johnson v. Chicago, M. & St. P. Ry. Co.,* 224 Fed. 196, 201. With this statement we agree. Certainly one should not be permited to take advantage of his own wrong. Under the facts pleaded it was impossible for plaintiff to sue within the limitation and it is a recognized maxim that the law requires not impossibilities. A legal right to damage for an injury is property and one can not be deprived of his property without due process. There can be no due process unless the party deprived has his day in court and if without his fault his debtor conceals from him his right until a statute deprives him of his remedy he is deprived of due process. It is also an ancient maxim of the common law that "Where there is a right there is a remedy." What a mockery to say to one, grievously wronged, "Certainly you *had* a remedy, but while your debtor concealed from you the fact that you had a right the law stripped you of your remedy."

Regardless of the number of authorities supporting the rule of strict construction we disagree with them on reason and hold that this alleged cause of action against the doctors was not barred by the statute relied upon. As to them the judgment is reversed and the cause remanded for further proceedings in harmony herewith.

MR. JUSTICE GOUDY dissents as to the reversal.