Christine RUSSELL and Uri Neil, as next friends of Michael Russell Neil, Plaintiffs–Appellants,

v.

PEDIATRIC NEUROSURGERY, P.C., Defendant–Appellee.

No. 99CA0200.

Colorado Court of Appeals, Div. III.

Jan. 20, 2000.

As Modified on Denial of Rehearing Feb. 17, 2000.

Certiorari Granted Dec. 18, 2000.

The Leventhal Law Firm, P.C., Beth L. Krulewitch, Denver, Colorado, for Plaintiffs–Appellants.

Johnson, Ruddy, McConaty & Sargent, P.C., Craig A. Sargent, Glendale, Colorado, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

In this medical negligence action, plaintiffs, Christine Russell and Uri Neil, as next friends of Michael Russell Neil (child) appeal the judgment dismissing their complaint against defendant, Pediatric Neurosurgery, P.C. We reverse and remand with directions to reinstate the complaint.

Plaintiffs commenced this proceeding against physicians who had provided care and treatment to their child, contending that the physicians' negligence caused certain injuries. Plaintiffs also joined defendant, a professional corporation that employed two of the physicians, contending it was liable for the acts and omissions of its physician employees under the doctrine of *respondeat superior*.

Defendant filed a motion to dismiss asserting that, under § 12–36–134, C.R.S.1999, it could not be held vicariously liable for the negligence of its employee-shareholders. The trial court agreed, concluding that: (1) a professional corporation can only be subject to a malpractice suit when its physician employee fails to carry insurance that satisfies the statute; (2) the corporation cannot practice medicine and therefore cannot become vicariously liable; and (3) the two physicians here maintained the level of insurance required by statute and the corporation was thus not amenable to suit. The court dismissed the complaint against defendant and certified its judgment as final under C.R.C.P. 54(b). This appeal followed.

I.

Contending that § 12–36–134, C.R.S.1999, does not preclude the imposition of vicarious liability upon a professional corporation when its physician employee-shareholders are negligent, plaintiffs assert the trial court erred in granting summary judgment. We agree.

■ Our review of a summary judgment is *de novo, Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995), as is our review of the trial court's interpretation of a statute. *Rowell v. Clifford,* 976 P.2d 363 (Colo.App.1998).

■ When interpreting a statute, we attempt to implement the intent of the General Assembly. To discern that intent, we look first to the plain language of the statute and interpret statutory terms in accordance with their commonly accepted meanings. *Sears v. Romer,* 928 P.2d 745 (Colo.App.1996). A strained or forced construction of a statutory term is to be avoided, and we must look to the context in which a statutory term is employed. *Miller v. Byrne,* 916 P.2d 566 (Colo.App.1995). Further, we must construe the statute as a whole so as to give consistent, harmonious, and sensible effect to all its parts and, if possible, give effect to every word in the statute. *Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332 (Colo.1997).

Section 12–36–134, C.R.S.1999, governs the formation and operation of medical professional service corporations. It provides that physicians may form professional service corporations, provided that the articles of incorporation comply with certain requirements. Among those requirements, the corporation "shall be organized solely for the purposes of conducting the practice of medicine only through persons licensed ... to practice medicine..:." Section 12–36–134(1)(b), C.R.S.1999.

In addition, all shareholders of the corporation must own their shares in their own right and must be licensed to practice medicine, the president must be a shareholder and a director, and, to the extent possible, all other directors and officers must be licensed to practice medicine. No lay directors or officers may exercise any authority over professional matters. Section 12–36–134(1)(f), C.R.S.1999.

Section 12–36–134(3), C.R.S.1999, further provides that the corporation must do nothing which, if done by a person licensed to practice medicine who is employed by the corporation, would violate the standards of professional conduct as provided for in § 12–

36–117, C.R.S.1999, and that "[a]ny violation ... shall be grounds for the board to terminate or suspend its right to practice medicine."

Finally, § 12–36–134(7) states "except as provided in this section, corporations shall not practice medicine."

■ In our view, these and other statutory provisions permit, rather than preclude, *respondeat superior* claims against medical professional service corporations arising from negligence of their physician employees. We reach this conclusion for a number of reasons.

The plain language of the statute provides that the entity must be organized solely for the purpose of conducting the practice of medicine. It specifically indicates that, except as provided in the statute, corporations shall not practice medicine. The clear import is to allow corporations to "practice medicine" under limited circumstances and to terminate the right of the corporation to "practice medicine" if a physician employed by the corporation violates any standard of professional conduct. To read the statute to say that medical service corporations may not practice medicine at all would be to ignore the express words of the statute stating the contrary. *See Zamarripa v. Q & T Food Stores, Inc., supra* (statute should be construed to give effect to all of its parts and to give effect to every word).

The requirements that a licensed physician must be the president, that the president must be a director and a shareholder, and that all other directors and officers should be licensed to practice medicine to the extent practicable are an apparent recognition that such a corporation can itself have some authority over professional matters relating to the practice of medicine. The statute tempers and regulates that control, however, by specifically requiring that licensed physicians be the *only* persons who may, in their capacity as officers and directors, control the corporation's medically licensed employees.

Essentially, physicians are empowered to control their own behavior and judgment as employees but may use a corporate business construct to structure their business affairs.

Indeed, the statute specifically states that the corporation conducts the practice of medicine only "through" licensed physicians, thus ensuring that the physicians themselves are the only persons exercising control over matters involving professional judgment.

Moreover, the prohibition against lay directors exercising authority over professional matters reinforces this conclusion, as does the provision that prohibits a professional corporation from doing anything that, if done by a licensed physician, would violate standards of professional conduct.

Further, if the shareholders of the entity desire insulation from personal liability for the acts or omissions of others, either the shareholders or the corporation must maintain insurance against liability that may be imposed upon the corporation resulting from any claim made against the corporation arising out of the performance of professional services by the corporation's "officers and employees ... who are licensed to practice medicine." Section 12–36–134(1)(g)(I), C.R.S.1999. Hence, the statute recognizes that vicarious liability claims may be asserted against the corporation for the negligence of its physician employees.

Contrary to defendant's contention, nothing in the statute limits such liability to the acts or omissions of non-physician employees. In fact, the statute provides in a separate subsection that the insurance must *also* protect the corporation from liability for the acts and omissions of all nonprofessional employees. *See* § 12–36–134(1)(g)(II), C.R.S.1999.

We also note that the supreme court has implied, in construing the Health Care Availability Act (HCAA), § 13–64–101, et seq., C.R.S.1999, that professional corporations may be vicariously liable for the negligence of both their professional and nonprofessional employees. *Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993) (there is nothing in the HCAA which suggests the legislature sought to reduce the cost of malpractice insurance only by limiting recoveries for actions brought against licensed professionals or professional corporations and entities whose liability results solely from the conduct of those professionals);

see also Continental Casualty Co. v. Empire Casualty Co., 713 P.2d 384 (Colo.App.1985) rev'd in part on other grounds sub nom. Empire Casualty Co. v. St. Paul Fire & Marine Insurance Co., 764 P.2d 1191 (Colo. 1988) (negligent physician's personal malpractice insurance need not be exhausted before activating his professional corporation's insurance covering the same negligence under theory of respondeat superior).

Relying upon Rosane v. Senger, 112 Colo. 363, 149 P.2d 372 (1944), and Moon v. Mercy Hospital, 150 Colo. 430, 373 P.2d 944 (1962), defendant argues that a physician's professional judgment can never be subject to the control of a corporation. Accordingly, defendant concludes, the corporation can never be vicariously liable for the physician's acts or omissions. We disagree.

In Rosane v. Senger, supra, and Moon v. Mercy Hospital, supra, the supreme court held that hospitals employing physicians to provide medical services cannot be held vicariously liable for the negligence of those physicians because hospitals have no legal right to control the performance of the physicians they employ, and because hospitals cannot engage in the practice of medicine. See also People v. Painless Parker Dentist, 85 Colo. 304, 275 P. 928 (1929). However, both Rosane and Moon were decided before the initial enactment of § 12–36–134 in 1969. See Colo. Sess. Laws 1969, ch. 236, § 2 at 825 (originally codified at § 91–1–37, C.R.S.1963). As the supreme court noted in Painless Parker, supra, the General Assembly may lawfully designate by statute those who may practice the healing arts. In our view, by its enactment of § 12–36–134, it has authorized corporations to "practice medicine," albeit in a limited and circumscribed way.

Nor are we persuaded that Austin v. Litvak, 682 P.2d 41 (Colo.1984), and Rodriquez v. City & County of Denver, 702 P.2d 1349 (Colo.App.1984), require a different result. Neither case addressed the effect or application of § 12–36–134.

We also recognize that a division of this court recently stated that, because a hospital or other corporation cannot be licensed to practice medicine, "an entity employing a doctor cannot be liable for a doctor's negligence based on respondeat superior." See Nieto v. State, 952 P.2d 834, 840 (Colo.App. 1997) (cert. granted March 23, 1998). Although that decision at first blush may appear to hold that no entity can be licensed to practice medicine, the division was not considering § 12–36–134; and, the entity involved was not a professional corporation as is the case here. Rather, the state Department of Corrections was the relevant entity. Accordingly, Nieto is inapposite.

Concerning the "right of control," we recognize that respondeat superior liability generally depends upon a showing that the corporate entity has some right to direct or control the actions of the employee. Rodriquez v. City & County of Denver, supra; Bauer v. Southwest Denver Mental Health Center, Inc., 701 P.2d 114 (Colo.App.1985). Because, at least to a limited degree, a corporation can "practice medicine" under § 12–36–134, et seq., it can exercise some right of control over its physician employees.

More importantly, however, whether there is a right to control generally presents an issue of fact. See Veintimilla v. Dobyanski, 975 P.2d 1122 (Colo.App.1997); Bain v. Town of Avon, 820 P.2d 1133 (Colo.App.1991), overruled on other grounds by Bertrand v. Board of County Commissioners, 872 P.2d 223 (Colo.1994). Here, defendant has consistently contended that it cannot, as a matter of law, exercise any control over its physician employees. As noted previously, the General Assembly has determined that it may, in fact, do so.

However, whether defendant here, in fact, exercised or had the right to exercise control over the two allegedly negligent physicians was not presented as an issue for resolution in the trial court. Because that contention was not presented to the trial court, we conclude that whether there is a right of control presents an issue of fact for determination upon remand.

II.

Defendant nevertheless asserts that § 12–36–134(1)(g), C.R.S.1999, precludes imposition of vicarious liability upon a professional corporation so long as any shareholder physician maintains insurance coverage in the specified amounts. We disagree.

The cited statute specifically provides that all *shareholders* of the corporation shall be jointly and severally liable for acts and omissions of employees *unless* each physician who is a shareholder or employee has a sufficient liability insurance policy insuring himself or herself and all non-licensed employees, *or* the corporation maintains insurance protecting itself against claims made against it for acts or omissions of its physician employees and officers. The statute does not preclude a claim against the professional corporation if sufficient insurance is carried; rather, it simply provides that a shareholder is not jointly liable for the acts or omissions of another employee if such insurance exists.

To read the statute to allow an injured person to sue the corporation only when it is uninsured, but to preclude such suits if it is insured, would lead to an unjust and unreasonable result. Because such a construction of a statute should be avoided, *see* § 2–4–201(1)(c), C.R.S.1999; *Rios v. Mireles,* 937 P.2d 840 (Colo.App.1996), we reject this contention.

The judgment is reversed and the cause is remanded with directions to reinstate the complaint.

Judge METZGER and Judge PLANK concur.