**PEDIATRIC NEUROSURGERY,
P.C., Petitioner,**

v.

**Christine RUSSELL and Uri Neil, as
next friends of Michael Russell
Neil, a minor, Respondents.**

No. 00SC228.

Supreme Court of Colorado,
En Banc.

April 15, 2002.

---

Johnson, McConaty & Sargent, Craig A. Sargent, Glendale, Colorado, Attorneys for Petitioner.

Leventhal & Brown, P.C., Jim Leventhal, Natalie Brown, Anthony Viorst, Denver, Colorado, Attorneys for Respondents.

Kennedy & Christopher, P.C., John R. Mann, Denver, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this case we determine the effect of section 12–36–134, 4 C.R.S. (2001) on the common-law corporate practice of medicine doctrine.[1] The plaintiffs, Christine Russell and Uri Neil as the next friends of Michael Russell Neil, sued defendant Pediatric Neurosurgery, a professional corporation, for medical negligence related to procedures performed on their son Michael as treatment for spina bifida. The trial court dismissed the case against the professional corporation on the grounds that under the corporate practice of medicine doctrine, a corporation may not be held vicariously liable for the negligence of a doctor.

The court of appeals reversed, holding that section 12–36–134 authorizes professional corporations to practice medicine and likewise be liable for the negligence of their physician employees. The court of appeals therefore remanded the case to the trial court to reinstate the plaintiffs' complaint against Pediatric Neurosurgery and to determine whether the professional corporation exercised control over the doctors. *Russell v. Pediatric Neurosurgery, P.C.*, 15 P.3d 288 (2000).

We affirm in part and reverse in part. We hold that section 12–36–134 provides an exception to the corporate practice of medicine

---

1. We granted certiorari on the following issue: "Whether the statute authorizing the formation of professional medical services corporations, C.R.S. § 12–36–134, abrogated the long-standing rule of law that an employing entity cannot exercise control over a physician's practice."

doctrine by permitting professional corporations to practice medicine and be liable for the negligence of physician employees. We also hold that under the two-prong test for liability under the theory of respondeat superior, the question of control applies only to the determination of whether an employer-employee relationship exists. When, as here, the corporation's C.R.C.P. 12(b)(5) motion to dismiss concedes that the alleged tortfeasor was its employee, the trial court need not inquire into whether the employer had a right to exercise control over the employee.

Thus, we remand this case to the court of appeals to return this case to the trial court to reinstate the plaintiffs' complaint against Pediatric Neurosurgery, P.C.

## II. Facts and Proceedings Below

Michael Russell Neil was born with spina bifida, an incomplete closure of the spine. He was treated from the time of his birth, in 1981, until 1989 by first Dr. Robert Hendee and then his partner Dr. Edward McLeary. The plaintiffs allege that the doctors' negligent treatment of Michael's birth defect caused Michael to change from an incomplete paraplegic to a quadriplegic with some use of his upper extremities.

Dr. Hendee incorporated under the name of Pediatric Neurosurgery, a professional corporation, in 1983. At that time he was the sole shareholder and employee. Dr. McLeary joined Pediatric Neurosurgery as a shareholder and employee in 1986. Dr. Hendee retired in 1989 and Dr. McLeary continued to work for Pediatric Neurosurgery until his retirement in 1996.

The plaintiffs initially filed this suit only against the doctors individually. They subsequently amended their complaint to add Pediatric Neurosurgery, P.C., alleging that the professional corporation is vicariously liable for the negligent acts of its employees, doctors Hendee and McLeary, under the theory of respondeat superior.

Pediatric Neurosurgery filed a motion to dismiss under C.R.C.P. 12(b)(5), arguing that the negligence of a physician may not imputed to an employing corporation, "since the corporation is not permitted to practice medi-cine and cannot exercise any control over the physician's independent medical judgment." It also argued that section 12–36–134(1)(g), 4 C.R.S. (2001) provides that a professional medical corporation may only be statutorily liable for the acts of a physician when the physician does not carry liability insurance that meets the standards set forth in the statute. Because the doctors carried the minimum amount of insurance, Pediatric Neurosurgery is not liable for their actions.

The trial court granted Pediatric Neurosurgery's motion to dismiss. The court held that the corporate practice of medicine doctrine, as propounded by this court in *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944) and *Moon v. Mercy Hospital*, 150 Colo. 430, 373 P.2d 944 (1962), precludes a professional medical corporation from controlling the independent medical judgment of a physician and therefore from being liable for the torts of physician employees. The trial court also agreed with Pediatric Neurosurgery's interpretation of section 12–36–134(1)(g) and held that Pediatric Neurosurgery could not be held liable in this case because the doctors' insurance coverage met the minimum requirements of the statute.

On appeal, the court of appeals reversed the trial court, holding that section 12–36–134 allows professional corporations to practice medicine. However, that court held that liability under the theory of respondeat superior depends upon whether the corporation has the right to control the actions of the employee. Because the question of right to control is a question of fact, the court reasoned that on remand the trial court must determine whether Pediatric Neurosurgery had the right to control the actions of doctors Hendee and McLeary.

Finally, the court disagreed with the trial court's interpretation of section 12–36–134(1)(g). It held that the statute provides only that the shareholders of a professional medical corporation may not be held jointly and severally liable for the actions of a corporate employee when the physicians carry the minimum insurance required. It further held that subsection (1)(g) does not preclude the corporate entity from being held vicari-

ously liable, despite the amount of insurance the doctors carry.

## III. Analysis

### A. Standard of Review

■ We review the trial court's dismissal of plaintiffs' case under C.R.C.P. 12(b)(5). We apply the same standards as the trial court and accept all pleadings of fact as true in the light most favorable to the plaintiff. *Schoen v. Morris,* 15 P.3d 1094, 1096 (Colo. 2000).

To answer the question presented, we initially discuss the history of the corporate practice of medicine doctrine and then consider whether section 12–36–134 abolishes the doctrine. Next we consider whether a professional medical corporate entity may be held vicariously liable for the torts of its physician employees. We then consider whether the court of appeals correctly held that the trial court should engage in a factual inquiry into whether the professional corporation had a right to exercise control over the actions of its physician employees when the corporation's C.R.C.P. 12(b)(5) motion to dismiss concedes that the doctors were its employees. Finally we address the contention of Pediatric Neurosurgery that subsection (1)(g) of section 12–36–134 precludes a court from imposing vicarious liability upon a professional medical corporation if minimum insurance requirements are met.

### B. The Corporate Practice of Medicine Doctrine and Professional Corporations

■ As background, we begin with a brief review of the corporate practice of medicine doctrine. Until 1963, the corporate practice of medicine doctrine absolutely barred doctors in Colorado from practicing medicine through corporations. *Rosane,* 112 Colo. 363, 149 P.2d 372; *Moon,* 150 Colo. 430, 373 P.2d 944; R. Crawford Morris & Alan R. Moritz, *Doctor and Patient and the Law* 376–78 (5th ed.1971). The doctrine rests on the principle that only a person, not a corporation, may practice medicine because it is impossible for a fictional entity, a corporation, to perform medical actions or be li-

censed to practice medicine. Therefore, a corporation or employing entity may not interfere with a doctor's independent medical judgment. The corporate practice of medicine doctrine has historically been used by this court in cases such as *Rosane* and *Moon* to preclude hospitals from being held vicariously liable for the negligent acts of doctors.

The doctrine stems from a concern that corporations have distinct interests from those of doctors and that patients will receive inferior care if corporations have any control over physicians' medical judgment. Bruce A. Johnson, *The Corporate Practice of Medicine: A Trap for the Unwary,* 20 Colo. Law. 2503, 2503 (1991). It is presumed that allowing corporations to employ physicians will force physicians to sacrifice concerns for patient care for those of a corporation that is presumably most concerned with profits and shareholder satisfaction. *Id.*

The corporate practice of medicine doctrine has historically had the effect of requiring doctors to practice as sole practitioners or in partnerships. Under the dictates of the doctrine, doctors in Colorado generally have had independent contractor relationships with the corporations, such as hospitals, for whom they work. Allen Sparkman, *Choice of Entity for Healthcare Professionals,* 29 Colo. Law. 81, 81 (2000). Since 1995, hospitals in Colorado have been able to employ doctors under section 25–3–103.7(2), 8 C.R.S. (2001) (amendment effective July 1, 1995). However, section 25–3–103.7 explicitly provides that corporations may not control a doctor's independent medical judgment, and therefore does not entirely eviscerate the corporate practice of medicine doctrine. § 25–3–103.7(3), 8 C.R.S. (2001); G. Lane Earnest & Sarah E. Meshak, *The Physician as the Hospital's Employee: S.B. 95–212,* 24 Colo. Law. 2345, 2347 (1995).

### C. Professional Medical Corporation Statute Section 12–36–134

■ We must determine whether section 12–36–134 statutorily abolished the common law corporate practice of medicine doctrine. This is a question of statutory interpretation. The task of the court in interpreting a statute is to determine and give

effect to the intent of the legislature. *Colo. Office of Consumer Counsel v. PUC,* 42 P.3d 23, 26 (Colo.2002). If the plain language of the statute clearly expresses the legislative intent, then the court must give effect to the ordinary meaning of the statutory language. Likewise, the court should avoid interpreting a statute in a way that defeats the obvious intent of the legislature. *Id.*

■ Further, a statute must be read and considered as a whole. Each part of the statute must be given consistent and harmonious effect. *Id.*

2. Section 12–36–134, 4 C.R.S. (2001) provides in pertinent part:

(1) Persons licensed to practice medicine by the board may form professional service corporations for the practice of medicine under the "Colorado Corporation Code".... The articles of incorporation of such corporations shall contain provisions complying with the following requirements:
. . . .
(b) The corporation shall be organized solely for the purposes of conducting the practice of medicine only through persons licensed by the board to practice medicine in the state of Colorado.
. . . .
(d) All shareholders of the corporation shall be persons licensed by the board to practice medicine in the state of Colorado, and who at all times own their shares in their own right. They shall be individuals who ... are actively engaged in the practice of medicine in the offices of the corporation.
. . . .
(f) The president shall be a shareholder and a director and, to the extent possible, all other directors and officers shall be persons having the qualifications described in paragraph (d) of this subsection (1). Lay directors and officers shall not exercise any authority whatsoever over professional matters.
(g) The articles of incorporation shall provide and all shareholders of the corporation shall agree that all shareholders of the corporation shall be jointly and severally liable for all acts, errors, and omissions of the employees of the corporation or that all shareholders of the corporation shall be jointly and severally liable for all acts, errors, and omissions of the employees of the corporation except during periods of time when each person licensed by the board to practice medicine in Colorado who is a shareholder or any employee of the corporation has a professional liability policy insuring himself and all employees who are not licensed to practice medicine who act at his direction in the amount of fifty thousand dollars for each claim and an aggregate top limit of liability per year for all claims of one hundred fifty thou-

The plaintiffs contend, and the court of appeals agreed, that the statute at issue, section 12–36–134,[2] allows corporations to practice medicine in a limited manner by allowing doctors to incorporate. We agree. The statute plainly provides, "Persons licensed to practice medicine ... may form professional service corporations for the practice of medicine." § 12–36–134(1), 4 C.R.S. (2001).

The statute includes restrictions on how a professional medical corporation may be established. For example, all shareholders of

sand dollars or the corporation maintains in good standing professional liability insurance which shall meet the following minimum standards:
(I) The insurance shall insure the corporation against liability imposed upon the corporation by law for damages resulting from any claim made against the corporation arising out of the performance of professional services for others by those officers and employees of the corporation who are licensed by the board to practice medicine.
(II) Such policies shall insure the corporation against liability imposed upon it by law for damages arising out of the acts, errors, and omissions of all nonprofessional employees.
(III) The insurance shall be in an amount for each claim of at least fifty thousand dollars multiplied by the number of persons licensed to practice medicine employed by the corporation....
(IV) The policy may provide that it does not apply to: Any dishonest, fraudulent, criminal, or malicious act or omission of the insured corporation or any stockholder or employee thereof; the conduct of any business enterprise, as distinguished from the practice of medicine....
. . . .
(3) The corporation shall do nothing which, if done by a person licensed to practice medicine in the state of Colorado employed by it, would violate the standards of professional conduct as provided for in section 12–36–117. Any violation by the corporation of this section shall be grounds for the board to terminate or suspend its right to practice medicine.
(4) Nothing in this section shall be deemed to diminish or change the obligation of each person licensed to practice medicine employed by the corporation to conduct his practice in accordance with the standards of professional conduct provided for in section 12–36–117.
. . . .
(7) Except as provided in this section, corporations shall not practice medicine. Employment of a physician in accordance with section 25–3–103.7, C.R.S., shall not be considered the corporate practice of medicine.

such a corporation must be licensed to practice medicine, all directors and officers should be physicians, and any lay directors and officers may not exercise any authority over professional matters. § 12–36–134(1)(d), (1)(f).

■ The language of the statute demonstrates that the legislature contemplated professional corporations may practice medicine, have control over medical matters, and be vicariously liable for the negligent acts of its employees. Several parts of the statute reveal this intent: subsection (1)(b) demonstrates that the legislature intended for professional corporations to practice medicine. That subsection requires the corporation to be organized "solely for the purposes of conducting the practice of medicine only through persons licensed by the board to practice medicine." Additionally, subsection (7) indicates the same intent by providing, "Except as provided in this section, corporations shall not practice medicine," indicating that section 12–36–134 permits professional corporations to practice medicine.

Furthermore, subsection (1)(f), evidences that the legislature intended that professional corporations may exercise control over physician employees. That section forbids lay directors from exercising authority over professional matters and thereby implies that a corporation's physician directors and officers do have such authority.

Finally, the statute demonstrates that the legislature intended for a professional medical corporation to be vicariously liable for acts of physician employees. Subsection (1)(g)(I), a section dealing with insurance for the corporation, states that "insurance shall insure the corporation against *liability imposed upon the corporation by law* for damages resulting from any *claim made against the corporation arising out of performance of professional services* ...." § 12–36–134(1)(g)(I) (emphasis added).

Pediatric Neurosurgery argues that the language in subsection (3) indicates that the general assembly did not intend for professional medical corporations to practice medicine. That section states, "The corporation shall do nothing which, if done by a person licensed to practice medicine ... employed

by it, would violate the standards of professional conduct...." We disagree. We read this language to mean that the corporation may practice medicine but, as with the doctors themselves, may not do anything that violates medical standards of conduct.

Section 12–36–134 expressly does not affect the corporate practice of medicine doctrine as it applies to hospitals. In fact, subsection (7) provides that employment of a physician under section 25–3–103.7 (pertaining to employment of physicians by hospitals) "shall not be considered the corporate practice of medicine." § 12–36–134(7), 4 C.R.S. (2001).

Although we agree that section 12–34–136 did not abolish the corporate practice of medicine doctrine in Colorado, we hold that it creates an exception to the common-law rule that corporations may not practice medicine.

As further support for our holding that section 12–36–134 creates an exception to the corporate practice of medicine doctrine, we have found references to the exception in various law journal articles regarding the doctrine in Colorado. These references reveal that it is well-accepted within the field of health care law that section 12–36–134 creates an exception to the corporate practice of medicine doctrine. "[P]rofessional corporations ... for the practice of medicine are exempted [from the prohibition on the corporate practice of medicine]." Johnson, *supra*, at 2504. "Corporations other than hospitals are not authorized to employ physicians or otherwise engage in the practice of medicine, and physicians may not practice medicine as the partner, agent, employee of or in joint venture with such corporations, other than professional service corporations." Earnest, *supra*, at 2347.

Additionally, the legislature has incorporated this exception into other sections of the Colorado code. In section 12–36–117, 4 C.R.S. (2001), the legislature defines unprofessional medical conduct. Paragraph (1)(m) of that statute prohibits a doctor from practicing medicine with others, including corporations, who are not licensed physicians, "other than a professional services corporation for the practice of medicine as defined

in section 12–36–134." § 12–36–117(1)(m), 4 C.R.S. (2001). Likewise, a portion of the Health Care Availability Act that deals with tort reform defines a "health care professional" as any person licensed to practice medicine, nursing, dentistry, or other health profession, and "[t]he term includes any professional corporation ... permitted by the laws of this state." § 13–64–202(4)(a), 5 C.R.S. (2001); *see also* § 13–64–403(12)(a), 5 C.R.S. (2001); § 25–4–2003(3), 8 C.R.S. (2001).

The plain language of section 12–36–134 and the references to professional medical corporations in articles regarding the practice of health law and in various sections of the Colorado code convince this court that section 12–36–134 permits professional corporations to practice medicine.

### D. Liability and Respondeat Superior

Having decided that section 12–36–134 provides an exception to the corporate practice of medicine doctrine, we turn now to the question of whether a professional medical corporation may be held vicariously liable for the acts of its physician employees.

In the 1960s, many states enacted statutes similar to section 12–36–134 to allow doctors and other professionals to take advantage of benefits that accompany corporate form. Sparkman, *supra*, at 81; Morris, *supra*, at 378. Incorporation allows certain tax benefits as well as limited liability, centralized management, continuity of life, and greater freedom of transferability of interests. 18 Am.Jur.2d *Corporations* § 37 (1985).

 Limited liability in the professional corporation context is the same as it is with ordinary business corporations. William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 112.10 (1993). Now that many of the tax benefits that accompany corporate form have been eliminated, limited liability remains one of the most important benefits to incorporation. Ronald L. Antonio, *Operating a Personal Service Corporation,* 17 Colo. Law.2011, 2011 (1988).

Limited liability means that the individual shareholders of the professional corporation are not personally liable for claims against the corporation.[3] However, the corporate entity is held responsible for its employees' torts if the torts occur while the employees are acting on behalf of the corporation. 18B Am.Jur.2d *Corporations* § 1834 (1985); Morris, *supra*, at 377; Fletcher, *supra*, §§ 33, 4877.

 Likewise, the theory of respondeat superior provides that an employer may be held vicariously liable for an employee's torts when the act is committed within the course and scope of employment. *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 473 (Colo.1995); *Moses v. Diocese of Colo.,* 863 P.2d 310, 329 (Colo.1993). An act of an employee is within the scope of his employment if the work done is assigned to him by his employer, is necessarily incidental to that work, or is customary in the employer's business. *Moses,* 863 P.2d at 330.

The court of appeals held that respondeat superior liability "depends upon a showing that the corporate entity had some right to direct or control the actions of the employee." *Russell,* 15 P.3d at 291. We disagree.

 Although the court of appeals' holding correctly states the law, that court's holding compresses the two prongs of the test used to find the employer liable under the theory of respondeat superior. First, the plaintiff must show that an employer-employee relationship exists. Next, the plaintiff must show that the act occurred in the course and scope of the employee's employment.

 Courts only need address the question of control to determine the first prong of the test: whether the tortfeasor has an employee or independent contractor relationship with the employer. *Norton v. Gilman,* 949 P.2d 565, 567 (Colo.1997) ("[T]he most important factor in determining whether a worker qualifies as an employee is the alleged employer's right to control the details of performance."); *Dumont v. Teets,* 128 Colo. 395,

---

**3.** Of course, the individual tortfeasor remains liable for his own torts. *Valley Dev. Co. v. Weeks,* 147 Colo. 591, 600, 364 P.2d 730, 734, (1961);

Morris, *supra,* at 368. This long-standing rule of torts is not disputed in this case.

397, 262 P.2d 734, 735 (1953). Once an employer-employee relationship is found, the question of control is no longer part of the court's inquiry.

■■■ Pediatric Neurosurgery's motion to dismiss concedes that Hendee and McLeary were employees of the professional corporation when they cared for Michael Russell Neil. Therefore, the trial court need not address the question of control to determine that an employer-employee relationship existed between the professional corporation and the doctors.

Further, neither party raised the question of whether the care of Michael Russell Neil was performed during Hendee and McLeary's course and scope of employment for Pediatric Neurosurgery. Therefore, we hold for the purposes of the defendant's C.R.C.P. 12(b)(5) motion to dismiss that Pediatric Neurosurgery, P.C. may be held vicariously liable for the negligence of Hendee and McLeary under a theory of respondeat superior. Accordingly, we reverse that portion of the court of appeals' judgment that held the trial court must determine whether Pediatric Neurosurgery had the right to exercise control over Hendee and McLeary.

### E. Effect of Section 12–36–134(1)(g)

■■■ Lastly, we address Pediatric Neurosurgery's argument that section 12–36–134(1)(g) precludes imposing vicarious liability upon a professional medical corporation if that corporation maintains the minimum levels of insurance required by that section.

The plain language of subsection (1)(g) reveals the flaw in Pediatric Neurosugery's argument. Paragraph (g) begins, "[A]ll *shareholders* of the corporation ... shall be jointly and severally liable for all acts, errors, and omissions of the employees of the corporation." § 12–36–134(1)(g) (emphasis added). The paragraph then provides two exceptions to when the shareholders will be jointly and severally liable. Both exceptions require the shareholder employee physicians or the corporation to carry a minimum amount of insurance. Each individual must be insured— by himself or the corporation—for $50,000 per claim and $150,000 per year.[4]

Nowhere in subsection (1)(g) does the statute address liability of the corporate entity. Likewise, the statute does not indicate that the legislature intended to abrogate the law of corporations that a corporate entity is liable for the torts of its employees. In fact, as discussed above, under the law of corporations, shareholders are not typically held jointly and severally liable for the actions of corporate employees. This limitation on liability is one of the very reasons businesses choose to incorporate. Fletcher, *supra*, at § 33 ("The shareholders of a corporation, unless they personally participate, are not liable individually for torts committed by the corporation.").

Thus, we construe subsection (1)(g) to address only the manner by which shareholders may limit their personal liability for the torts of corporate employees. This subsection does not preclude the corporation from being held vicariously liable under the doctrine of respondeat superior.

### IV. Conclusion

For the reasons discussed, we affirm in part and reverse in part and remand this case to the court of appeals to return this case to the trial court to reinstate the plaintiffs' complaint against the defendant.

---

4. We find it interesting to contrast the minimum required insurance for shareholders of a professional medical corporation to avoid liability with the statutory insurance requirements for physicians to maintain active licensure under section 13–64–301. That statute requires each physician to have insurance of $500,000 per incident and $1.5 million per year. § 13–64–301(1)(a), 5 C.R.S. (2001).