COLORADO COMPENSATION INSUR-
ANCE AUTHORITY, d/b/a Pinnacol As-
surance Company, Intervenor–Appellant,

and

Kenneth W. SATTERFIELD, Plaintiff–
Appellee and Cross–Appellant,

v.

Dr. Ron JONES, Defendant–Appellee.

No. 03CA0487, 03CA1740.

Colorado Court of Appeals,
Div. V.

May 19, 2005.

Rehearing Denied June 23, 2005.

Certiorari Denied April 3, 2006.*

---

* Chief Justice MULLARKEY would grant the Cross-Petition as to the following issue:

Whether the appellate court erred, for purposes of Respondent/Cross-Petitioner Satterfield's negligent supervision claim against Petitioner, in holding that Petitioner did not breach his duty of care to Satterfield, when Petitioner failed to stop Hagan from chasing and shooting Satterfield.

Ruegsegger Simons Smith & Stern, LLC, Charles M. Pratt, Mark J. Gauthier, Denver, Colorado, for Intervenor–Appellant.

Lindquist & Vennum, P.L.L.P., Charles F. Brega, Scott T. Rodgers, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Nathan, Bremer, Dumm & Myers, P.C., Mark H. Dumm, Benjamin E. Tracy, and Allison R. Ailer, for Defendant–Appellee.

NIETO, J.

Intervenor, Colorado Compensation Insurance Authority, d/b/a Pinnacol Assurance Company (Pinnacol), appeals the judgment rejecting its subrogation claim and determining that plaintiff, Kenneth W. Satterfield was entitled to all the proceeds received when Pinnacol and Satterfield settled a personal injury claim against Harley and Sylvia Hagan. Satterfield and Pinnacol also appeal the summary judgment dismissing a similar personal injury claim against Ron Jones. We affirm in part, reverse in part, and remand with directions.

Kenneth Satterfield was driving a truck with an attached semitrailer for his employer when he approached a herd of cattle. The cattle were being herded on the road by Jones, the owner, and the Hagans, who were assisting Jones. Satterfield slowed but did not stop, and he proceeded to pass the herd. This angered Jones and Harley Hagan.

As Satterfield drove away, Harley Hagan pursued him for some distance. Hagan then went to his nearby home where he obtained a gun. Hagan returned to the herd, spoke with Sylvia Hagan, and then left again in pursuit of Satterfield. Hagan did not tell Jones where he was going or what he intended to do. Sylvia Hagan called the police and reported that Hagan had a gun and was pursuing Satterfield. Hagan found Satterfield unloading the semitrailer several miles from the initial incident. Hagan then shot Satterfield, and as a result of the wound, Satterfield was paralyzed from the waist down.

Because the injury was sustained in the course of his employment, Satterfield received workers' compensation benefits paid by Pinnacol.

Satterfield brought a personal injury action against the Hagans and Jones. Pinnacol was permitted to intervene in the actions to assert subrogation rights under § 8–41–203, C.R.S.2004, to the extent of the workers' compensation benefits it was obligated to provide to Satterfield.

Satterfield and Pinnacol agreed to settle the personal injury action against the Hagans for $500,000, the coverage limit under their insurance policy. Pinnacol also re-

ceived an additional $30,000 from Harley Hagan for a waiver of Pinnacol's right to seek restitution in the criminal action brought against him.

Satterfield and Pinnacol did not agree on an allocation of the settlement proceeds, and Pinnacol moved for an evidentiary hearing in accordance with *Colorado Compensation Insurance Authority v. Jorgensen,* 992 P.2d 1156 (Colo.2000), to determine the portion of the proceeds it would be entitled to receive. Following a hearing, the trial court found Satterfield's noneconomic damages caused by Harley Hagan were $732,500 and his damages for physical impairment and disfigurement were $2 million. Pinnacol does not appeal these findings. The court also found that Sylvia Hagan was responsible for noneconomic damages of $366,250 and that Pinnacol, pursuant to its workers' compensation obligations, had paid $129,000 in medical benefits and $17,670 for temporary total disability benefits. It further found that Pinnacol had no subrogation rights in $116,000 of the amount it had paid because that amount was equivalent to benefits under the motor vehicle insurance policy covering the truck Satterfield was driving (PIP benefits), and Pinnacol does not appeal this ruling.

The court also found that Pinnacol would continue to pay workers' compensation benefits to Satterfield, but it made no findings as to the amount of future payments. The court then ruled that Pinnacol had no subrogation rights to any part of the settlement because the $500,000 settlement would not fully compensate Satterfield for all his noneconomic damages.

The trial court granted summary judgment and dismissed the claims against Jones.

## I.

■ Pinnacol first contends the trial court erred in allocating all of the settlement to noneconomic damages and distributing the full amount to Satterfield. We agree.

■ The payment of workers' compensations benefits to an injured employee operates as an assignment to the workers' compensation insurer of the employee's cause of action against a third-party tortfeasor responsible for the employee's injuries to the extent of the benefits for which the insurer is liable, including past and future benefits. Section 8–41–203(1)(b) C.R.S.2004; *Colo. Comp. Ins. Auth. v. Jorgensen, supra.* However, the subrogation right, as it existed at the time of Satterfield's injury, extends only to the employee's right to recover economic damages from the tortfeasor. It does not include every right of recovery that the employee has against the tortfeasor and does not extend to the employee's right to recover noneconomic damages. *Colo. Comp. Ins. Auth. v. Jorgensen, supra.*

■ Where a settlement is reached with the third-party tortfeasor, the insurer's subrogation interest extends to the settlement proceeds. If the parties to the settlement agreement do not allocate the proceeds, they may request the trial court to do so. In that event, the court must determine the amount of each category of damages actually suffered by the employee, and based on these findings, allocate the settlement among the categories. "While a number of factors may be considered in attributing the settlement proceeds to the economic and non-economic damage categories respectively, once the allocation has been determined, the distribution of settlement proceeds should be based on that allocation." *Reliance Ins. Co. v. Blackford,* 100 P.3d 578, 580 (Colo.App.2004).

■ Colorado law does not require that an employee be fully compensated for his or her noneconomic damages before the insurer's subrogation rights may be exercised. *Colo. Comp. Ins. Auth. v. Jorgensen, supra; Reliance Ins. Co. v. Blackford, supra.*

The *Reliance* case is instructive here because the facts are very similar. There, the employee and the insurer settled with the tortfeasor but did not agree on the allocation of the settlement proceeds. The trial court, without determining the actual amount of damages, determined that economic and noneconomic damages each exceeded the settlement amount, and it ordered that the employee was entitled to all the proceeds. A division of this court held that the trial court erred in not apportioning the settlement proceeds between economic and non-

economic damages. The division directed the trial court to determine the actual amount of the employee's economic and noneconomic damages and to apportion the settlement proceeds accordingly. We agree with the reasoning and conclusion in the *Reliance* opinion, and we follow it here.

Here, the trial court determined the amount of Satterfield's damages for physical impairment and disfigurement and his noneconomic damage, but it did not determine his actual past and future economic damage. It then allocated all of the settlement proceeds to noneconomic damages.

Accordingly, we conclude the trial court erred in not determining Satterfield's actual past and future economic damages and in allocating all of the settlement proceeds to noneconomic damages. On remand, the trial court must determine Satterfield's past and future economic damages and reallocate the settlement proceeds among economic, noneconomic, and physical impairment and disfigurement damages.

## II.

■ Pinnacol next contends the trial court erred in finding its subrogation rights did not extend to physical impairment and disfigurement damages. We agree in part.

In July 2003, the General Assembly added § 8–41–203(1)(d)(I)(B), C.R.S.2004, to provide explicitly that for injuries occurring on or after that date, a workers' compensation insurer's subrogation rights extend to an employee's physical impairment and disfigurement damages. Colo. Sess. Laws 2003, ch. 406 at 2614. However here, the court issued its findings in December 2002 and Satterfield's injury occurred long before that.

■ The retroactive application of statutes is generally disfavored. Absent legislative intent to the contrary, a statute is presumed to operate prospectively, meaning it operates on transactions occurring after its effective date. *In re Estate of DeWitt,* 54 P.3d 849, 854 (Colo.2002).

■ In workers' compensation cases, the substantive rights and liabilities of the parties are determined by the statute in effect at the time of a claimant's injury, while procedural changes in the statute become effective during the pendency of a claim. *Am. Comp. Ins. Co. v. McBride,* 107 P.3d 973 (Colo.App. 2004).

■ Here, because the amended statute would affect the substantive rights and liabilities of the parties, the amendment is not retroactive. Therefore, we must apply the statute that was in effect at the time of the injury. At that time, the subrogation rights provided by the statute were interpreted to limit a workers' compensation insurer's subrogation rights to economic damages received by the employee. *Colo. Comp. Ins. Auth. v. Jorgensen, supra; Reliance Ins. Co. v. Blackford, supra.*

■ Damages for physical impairment or disfigurement can be in the nature of economic or noneconomic damage. *Dupont v. Preston,* 9 P.3d 1193 (Colo.App.2000), *aff'd,* 35 P.3d 433 (Colo.2001). However, under Colorado common law, physical impairment and disfigurement have historically been considered an element of damage separate from the categories of economic and noneconomic damages. "If someone tortiously inflicts a permanent injury on another he or she has taken away something valuable which is independent and different from other recognized elements of damages such as pain and suffering and loss of earning capacity." *Preston v. Dupont, supra,* 35 P.3d at 441 (quoting 2 Marilyn Minzer et al., *Damages in Tort Actions* § 12.02 (Matthew Bender 1992)); *see also Cooley v. Paraho Dev. Corp.,* 851 P.2d 207 (Colo.App.1992)(§ 13–21–102.5, C.R.S. 2004, establishes three separate categories of damages: economic, noneconomic, and physical impairment or disfigurement) *aff'd sub nom. Gen. Elec. Co. v. Niemet,* 866 P.2d 1361 (Colo.1994).

Thus, the question is whether damages for physical impairment or disfigurement were included in economic damages for purposes of the former version § 8–41–203. For the following reasons, we conclude that such damages are not so included.

In construing a statute, we may consider the common law and statutory provisions

relating to similar subjects. Section 2–4–203(1)(d) C.R.S.2004.

As discussed above, under Colorado common law, physical impairment and disfigurement damages have historically been considered as a category of damages separate from economic and noneconomic damages. The General Assembly has also treated these as a separate category of damages in § 13–21–102.5. Further, the General Assembly has treated disfigurement as a separate category of damages in workers' compensation claims. Section 8–42–108, C.R.S.2004.

Therefore, we conclude that the General Assembly, prior to the amendment of § 8–41–203 in 2003, did not intend to include physical impairment or disfigurement damages recovered by an employee within the general category of economic damages subject to the insurer's right of subrogation. We find support for this conclusion in the General Assembly's determination that it was necessary to amend § 8–41–203 to grant such subrogation rights.

Pinnacol argues that the holding in *Jorgensen* supports its claim to subrogation rights in that portion of the settlement allocated to physical impairment and disfigurement. We do not agree. *Jorgensen* specifically limited the application of the subrogation right to economic damages and we have determined that physical impairment and disfigurement are categories of damages separate from economic damage.

However, under § 8–42–108, Satterfield may be entitled to disfigurement benefits not to exceed $2000. Therefore, while Pinnacol had no general right to subrogation in Satterfield's physical impairment and disfigurement damages, it may be entitled to a limited subrogation right in such damages if Satterfield is awarded benefits under § 8–42–108 in the future. See § 8–41–203(1)(c) C.R.S.2004 (subrogation extended to "other benefits" employee is entitled to receive).

Therefore, to the extent the trial court's judgment did not consider Pinnacol's subrogation rights to physical impairment and disfigurement damages in the event it pays disfigurement compensation under § 8–42–108, we reverse the order denying such subrogation rights. In all other respects, we affirm the judgment denying subrogation rights in Satterfield's physical impairment and disfigurement damages.

### III.

█ Pinnacol next contends that the record does not support the trial court's finding that Sylvia Hagan was negligent and responsible for $366,250 of Satterfield's noneconomic damages. Satterfield asserts, and we agree, that Pinnacol did not raise this issue in the trial court. An argument not presented to the trial court cannot be raised for the first time on appeal. *Wisehart v. Zions Bancorporation*, 49 P.3d 1200 (Colo.App.2002). Therefore, we decline to consider this contention.

### IV.

Pinnacol and Satterfield both contend the trial court erred in granting summary judgment and dismissing the claims against Jones. We agree in part.

█ Our review of an order granting summary judgment is de novo. Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions establish there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, we must view the allegations in the complaint in the light most favorable to the nonmoving party. *Cissell Mfg. Co. v. Park*, 36 P.3d 85 (Colo.App.2001). The nonmoving party is entitled to the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts, and all doubts must be resolved against the moving party. *HealthONE v. Rodriguez*, 50 P.3d 879, 887 (Colo.2002).

### A.

█ Pinnacol and Satterfield first argue that a genuine issue of material fact remains as to whether Jones was liable for Satterfield's injuries under the doctrine of respondeat superior. We agree.

█ The doctrine of respondeat superior provides that an employer may be held

vicariously liable for an employee's torts when the act is committed within the course and scope of employment. To establish a defendant's liability under the doctrine, the plaintiff must show that an employer-employee relationship existed and that the act occurred in the course and scope of employment. *Pediatric Neurosurgery, P.C. v. Russell,* 44 P.3d 1063 (Colo.2002).

■■■■ The most important factor in determining whether a worker qualifies as an employee is the alleged employer's right to control the details of performance. *Pediatric Neurosurgery, P.C. v. Russell, supra.* The right to control the activities, not the exercise of control, is the determinative factor in deciding whether an employer-employee relationship exists. *Tunget v. Bd. of County Comm'rs,* 992 P.2d 650 (Colo.App.1999). An employer's control over an employee does not mean that the employer must stand by constantly and observe and supervise the work; it means that the relation presupposes a right on the part of the employer to have the work performed in such a manner as he or she directs and a correlative duty on the part of the employee to perform in the manner directed, expressly or by implication, by the employer. *Grease Monkey Int'l, Inc. v. Montoya,* 904 P.2d 468 (Colo.1995).

■■■ An employer can be liable for an intentional tort committed by an employee "if the servant's conduct was in some way caused by an intent to serve his employer's interests and connected with his authorized acts." *Grease Monkey Int'l, Inc. v. Montoya, supra,* 904 P.2d at 473 (quoting Warren A. Seavey, *Handbook of the Law of Agency* § 83(B)(1964)).

■■■ The parties need not have a conventional employer-employee relationship before the doctrine of respondeat superior can apply. In some circumstances a person who is not paid by an employer but who attends to the employer's business can be an employee. *Heckman v. Warren,* 124 Colo. 497, 238 P.2d 854 (1951)(unpaid person who assisted truck driver in extinguishing a fire on the truck was an emergency employee of the employer and not a mere volunteer); *Perkins v. Reg'l Transp. Dist.,* 907 P.2d 672 (Colo.App.

1995)(for purposes of respondeat superior, bus driver employed and paid by a contractor held to be an employee of transportation district based on district's degree of control over driver); Restatement (Second) of Agency § 225 cmt. a (1957)(consideration is not necessary to create the relation of master and servant); *see also* Bradley S. Abramson, *The Law of Volunteers and Gratuitous Employees,* 33 Colo. Law. 115 (Aug.2004)(concluding that an employer may be liable for injuries to third parties caused by an unpaid worker acting in the course of employment, if the unpaid worker is found to be a gratuitous employee).

In *Perkins v. Reg'l Transp. Dist., supra,* a division of this court held that for purposes of respondeat superior, the District was the employer of a driver who was employed by a contractor, paid by the contractor, and who was driving a bus leased to the contractor. The holding was based on the District's right to control the driver's performance of his work. The division stated:

> In order to sustain a claim based upon respondeat superior, a plaintiff must show that the defendant individually had actual control over or had the right to control the actions of the other. This liability derives historically from the power and ability of the employer to control the acts of the employee.

*Perkins v. Reg'l Transp. Dist., supra,* 907 P.2d at 674.

■■■ Thus, the determination whether, under the doctrine of respondeat superior, an employer can be liable for the conduct of an unpaid worker, turns on whether the employer has actual control or the right to control the worker's activities. *Pediatric Neurosurgery, P.C. v. Russell, supra; Perkins v. Reg'l Transp. Dist., supra.*

Jones argues that Hagan was a mere volunteer and therefore, he cannot be held responsible under the doctrine of respondeat superior. However, while it appears to be undisputed that Hagan was not being paid for his work, it could be inferred from evidence in the record that Jones controlled or had the right to control Hagan's work on the cattle drive. The record shows that for three days, Hagan assisted Jones in moving cattle

from a mountain pasture to Jones's ranch. Jones acknowledged that he controlled the cattle drive by determining when the drive would begin, when they would start and stop each day, the route they would take, and the destination.

Further, there was evidence that could support an inference that when Hagan confronted Satterfield he was acting to support Jones's cattle drive. Hagan went in search of Satterfield because he thought Satterfield had endangered the herd and the herders. In his testimony at his sentencing hearing, Hagan said he had a right to prevent Satterfield from coming back down the road.

Therefore, there was a factual dispute as to the relationship of Hagan and Jones that must be resolved before it can be determined whether Jones was liable under the doctrine of respondeat superior. Thus, the trial court erred in granting summary judgment on this claim.

Relying on *Arnold v. Colorado State Hospital*, 910 P.2d 104 (Colo.App.1995), Jones argues that even if the doctrine of respondeat superior were applicable, the dismissal of all claims against the Hagans extinguished any claim Satterfield had against him based on that doctrine. This reliance is misplaced.

In *Arnold,* the claims against the employee were dismissed because he was found not liable after a trial. Thus, there was no basis to hold the employer vicariously liable for the acts of the employee.

Here, it was not determined that the Hagans had no liability. The claims against the Hagans were dismissed because of a settlement, and in the settlement agreement, Satterfield expressly reserved his claims against Jones. Under these circumstances, the dismissal of the claims against the Hagans did not bar Satterfield's claims against Jones. *See Dworak v. Olson Const. Co.,* 191 Colo. 161, 551 P.2d 198 (1976)(giving employee covenant not to sue after settlement did not bar respondeat superior claim against employer).

Accordingly, we reverse the summary judgment dismissing the claim asserted under the doctrine of respondeat superior.

### B.

Pinnacol and Satterfield also contend the court erred in dismissing the negligence claim against Jones because there was a disputed issue of fact as to whether he negligently breached a duty of care to protect Satterfield from Hagan. We disagree.

Negligence claims cannot succeed without showing that a duty existed and that the breach of the duty was a proximate cause of the injuries alleged. *Walcott v. Total Petroleum, Inc.,* 964 P.2d 609 (Colo.App.1998)

Here, even if we assume Jones had a duty to protect Satterfield from Hagan, there is no evidence that Jones breached this duty. The evidence shows that Hagan left to pursue Satterfield immediately after the truck had passed the herd. Hagan did not tell Jones where he was going or what he planned to do. Jones was not present when Hagan returned to the herd and spoke with his wife before continuing his pursuit of Satterfield. Further, the evidence showed that Jones left to find Hagan within a few minutes after Hagan had departed in pursuit of Satterfield, but was unable to locate him until after the shooting. Therefore, it is undisputed that Jones had no opportunity to prevent Hagan from injuring Satterfield. Accordingly, the court correctly dismissed the negligence claim against Jones.

### V.

The judgment allocating and distributing the settlement proceeds is affirmed in the following respects:

1) the determination of Satterfield's physical impairment and disfigurement damages and the noneconomic damages caused by both Harley and Sylvia Hagan;

2) the determination of the amount of Pinnacol's payments for workers' compensation benefits through the date of the hearing, and the determination that Pinnacol had no subrogation rights to amounts that were equivalent to PIP benefits;

3) the determination that Pinnacol has no subrogation rights in Satterfield's physical impairment and disfigurement damages except to the extent it denied Pinnacol subrogation rights in these damages for amounts Pinnacol may pay as disfigurement compensation under § 8–42–108.

It is reversed insofar as it allocated all the settlement proceeds to Satterfield's noneconomic damages. The case is remanded with directions that the trial court conduct further proceedings and:

1) determine the actual amount of economic damage Satterfield has suffered or will suffer in the future;

2) allocate the settlement proceeds in accordance with the determination of the amounts of economic, noneconomic, and physical impairment or disfigurement damages suffered by Satterfield;

3) determine what amount of the economic damage is not subject to Pinnacol's subrogation rights because it was or will be equivalent to PIP benefits;

4) from the amount of the settlement allocated to economic damages, distribute to Pinnacol any amounts to which it has subrogation rights for workers' compensation benefits actually paid to Satterfield, taking into account the $30,000 Pinnacol received from Harley Hagan;

5) distribute the balance of the settlement proceeds to Satterfield;

6) enter orders permitting Pinnacol to set off against the remaining amount, if any, of the settlement allocated to economic damages, any workers' compensation benefits it becomes obligated to pay to Satterfield in the future, and for which it has a subrogation right;

7) enter orders permitting Pinnacol to set off against the amount of the settlement allocated to physical impairment and disfigurement damages, any disfigurement compensation it becomes obligated to pay to Satterfield under § 8–42–108.

The summary judgment is affirmed insofar as it dismissed the negligence claim against Jones. It is reversed as to the dismissal of the respondeat superior claim, and the case is remanded for further proceedings.

Judge VOGT and Judge HAWTHORNE concur.