ESTATE OF Carolyn HARPER, by and through Alim AL–HAMIM, personal representative; Don Yhwyn Harper; Khai Norchea Pearson; and Ngozi Rukiya Harper, a minor, by and through her guardian and next friend Alim Al–Hamim, Plaintiffs–Appellants,

v.

DENVER HEALTH AND HOSPITAL AUTHORITY, Defendant–Appellee.

No. 04CA2398.

Colorado Court of Appeals, Div. II.

May 4, 2006.

Walter L. Gerash Law Firm, P.C., Walter L. Gerash, James F. Scherer, Andrew B. Reid, Denver, Colorado, for Plaintiffs–Appellants.

Jaudon & Avery, LLP, David H. Yun, Denver, Colorado, for Defendant–Appellee.

ROTHENBERG, J.

In this wrongful death action, plaintiffs, Estate of Carolyn Harper, Don Yhwyn Harper, Khai Norchea Pearson, and Ngozi Rukiya Harper, appeal the trial court order granting the motions of defendant, Denver Health and Hospital Authority (Denver Health), for partial dismissal under C.R.C.P. 12(b)(5) and for attorney fees pursuant to § 13–17–201, C.R.S.2005. We affirm and remand for an award to Denver Health of the attorney fees it incurred on appeal.

I.

Carolyn Harper sought medical treatment at Denver Health's Montbello Family Health Center following a business trip to West Africa. Erad A. Nash, a doctor at Denver Health, examined her, told her she was suffering from influenza, and prescribed ibuprofen. Four days later, she was placed in the intensive care unit at Aurora Medical Center, and shortly thereafter, she died from malaria.

Carolyn Harper was survived by her three children, Don Yhwyn Harper, Khai Norchea Pearson, and Ngozi Rukiya Harper. Plaintiffs, including Carolyn Harper's three children, filed this lawsuit against Nash and Denver Health, alleging that Nash negligently diagnosed Harper's condition and that Denver Health was vicariously liable for Nash's negligence. Plaintiffs also sought a declaratory judgment that the Colorado Governmental Immunity Act was inapplicable in this case or, in the alternative, was unconstitutional.

Denver Health and Nash moved to dismiss plaintiffs' respondeat superior and declaratory judgment claims pursuant to C.R.C.P. 12(b)(5). The trial court dismissed all claims against Denver Health, awarded attorney fees to Denver Health pursuant to § 13–17–201, and certified its order pursuant to C.R.C.P. 54(b).

In this appeal, we address only the dismissal of plaintiffs' vicarious liability claim

against Denver Health. The negligence claim against Nash is still pending, and the trial court did not certify as final the dismissal of the declaratory judgment against him.

## II.

Plaintiffs contend the trial court erred in granting Denver Health's C.R.C.P. 12(b) motion and in dismissing the claims against Denver Health. Relying on *Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063 (Colo.2002)(*Russell* ), plaintiffs maintain that § 25–29–101, et seq., C.R.S.2005 (the Health Authority Act), creates a statutory exception to the common law corporate practice of medicine doctrine and exposes Denver Health to vicarious liability. Plaintiffs rely on § 25–29–104(1), C.R.S.2005, which provides:

The mission of the authority [Denver Health] is to:

(a) Provide access to quality preventive, acute, and chronic health care for all the citizens of Denver regardless of ability to pay;

(b) Provide high quality emergency medical services to Denver and the Rocky Mountain region;

(c) Fulfill public health functions in accordance with the agreement entered into with the city pursuant to the authority granted in section 25–29–105 and the needs of the citizens of Denver;

(d) Provide for the health education of patients and ... participate in the education of the next generation of health care professionals; and

(e) Engage in research to the extent that it enhances the ability of the authority to meet the health care needs of its patients.

Because we conclude the Health Authority Act does not create a statutory exception to the corporate practice of medicine doctrine, we reject plaintiffs' contention.

## A.

. We review de novo an order of dismissal under C.R.C.P. 12(b)(5). We accept as true the factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911 (Colo.1996); *Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Colo.1992); *Negron v. Golder*, 111 P.3d 538 (Colo.App. 2004). A motion to dismiss may be granted only when the plaintiff's factual allegations cannot support a claim as a matter of law. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095 (Colo.1995).

Statutory interpretation is also a question of law which we review de novo. *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027 (Colo.2006); *Ryals v. St. Mary–Corwin Reg'l Med. Ctr.*, 10 P.3d 654 (Colo.2000). When interpreting a statute, our task is to give effect to the intent of the General Assembly, *Colo. Office of Consumer Counsel v. Pub. Utils. Comm'n*, 42 P.3d 23 (Colo.2002), and we avoid interpreting a statute in a way that would defeat its intent. *Klinger v. Adams County Sch. Dist. No. 50, supra*.

We construe statutory language in a manner that gives effect to every word. However, we also consider the language in the context of the statute as a whole. *See Anderson v. Longmont Toyota, Inc.*, 102 P.3d 323 (Colo.2004). It is only when a statute is reasonably susceptible of more than one meaning that we may consider other indicators, such as legislative history. *Water Rights of Park County Sportsmen's Ranch LLP v. Bargas*, 986 P.2d 262 (Colo. 1999).

## B.

■ The corporate practice of medicine doctrine is a common law principle that recognizes "it is impossible for a fictional entity, a corporation, to perform medical actions or be licensed to practice medicine." *Russell, supra*, 44 P.3d at 1067; *Daly v. Aspen Ctr. for Women's Health, Inc.*, 134 P.3d 450, 2005 WL 2456875 (Colo.App. No. 04CA0904, Oct. 6, 2005).

■ Under this doctrine, a corporation may not employ physicians, perform medical services, or interfere with a physician's independent medical judgment. *Russell, supra*, 44 P.3d at 1067. The doctrine thus shields corporations from vicarious liability for the negligent acts of their physician employees.

*Russell, supra,* 44 P.3d at 1067; *Moon v. Mercy Hosp.,* 150 Colo. 430, 373 P.2d 944 (1962); *Rosane v. Senger,* 112 Colo. 363, 149 P.2d 372 (1944).

■ Historically, the only exception to the corporate practice of medicine doctrine has been when a hospital committed independent acts of negligence. *Moon v. Mercy Hosp., supra; Camacho v. Mennonite Bd. of Missions,* 703 P.2d 598, 600 (Colo.App.1985); *see also* § 12–36–134(7)(a), C.R.S.2005. However, in 2002, the Colorado Supreme Court created another exception in *Russell, supra.*

There, the court concluded that in enacting a prior version of § 12–36–134, the General Assembly intended that professional medical corporations could be vicariously liable for acts of physician employees. In concluding that professional corporations practiced medicine, the supreme court construed various former subsections of § 12–36–134—particularly, § 12–36–134(1)(b) and § 12–36–134(7)(a)—which specifically (1) authorized professional corporations to practice medicine, (2) permitted such corporations to control the independent medical judgment of treating physicians, and (3) required professional corporations to carry insurance for claims against the corporations arising from the acts of physician employees. *Russell, supra.*

However, when *Russell* was announced, the former § 12–36–134(1)(b) required corporations formed under the statute to "be organized solely for the *purposes of conducting the practice of medicine*" (emphasis added). Former § 12–36–134(7)(a) provided that "except as provided in this section, [c]orporations shall not practice medicine," thus permitting an inference that corporations formed pursuant to § 12–36–134 could practice medicine.

The court in *Russell* reasoned that a corporation's directors and officers who were physicians had control over a treating physician's independent medical judgment based on former § 12–36–134(1)(f), which provided that *"[l]ay directors and officers shall not exercise any authority whatsoever over professional matters"* (emphasis added).

Citing § 12–36–134(1)(g)(I), C.R.S.2005, the supreme court further concluded the legislature intended that a professional medical corporation be vicariously liable for the acts of physician employees, because subsection (1)(g)(I) provides that "insurance shall insure the corporation against liability imposed upon the corporation by law for damages resulting from any claim made against the corporation arising out of the performance of professional services ...."

Based on these provisions, the court in *Russell* held that the former § 12–36–134 created a statutory exception to the corporate practice of medicine doctrine and that professional corporations could be held vicariously liable for the negligence of their physician employees.

In 2003, the General Assembly legislatively overruled *Russell* and amended § 12–36–134 to reinstate the corporate practice of medicine doctrine to the extent *Russell* had created an exception to it. *See* § 12–36–134(1)(b), (f) & (7)(a), C.R.S.2005.

The General Assembly declared:

[T]he purpose of enacting HB03–1012 [the amendments] is to state clearly and unequivocally the legislative intent of the general assembly to restore and reinstate the corporate practice of medicine doctrine in this state so that *no individual or entity, other than a patient's physician, may be held liable or vicariously liable in any action for the physician's professional negligence or other tortious conduct.* The general assembly further declares that the Colorado Supreme Court's decision in [*Russell*] no longer reflects [the] current statute, as amended by HB03–1012.

Colo. Sess. Laws 2003, ch. 240, sec. 1 at 1598 (emphasis added).

In amending the statute, the legislature made it clear that while physicians may be employed by hospitals, *see* § 25–3–103.7(2), C.R.S.2005, and by professional service corporations owned by physicians, *see* § 12–36–134, C.R.S.2005, these legal relationships do *not* expose professional corporations and hospitals to vicarious liability for the negligent acts of their medical professionals. *See* § 12–36–134(1)(f) ("Nothing in this article

shall be construed to cause a professional service corporation to be vicariously liable to a patient or third person for the professional negligence or other tortious conduct of a physician who is a shareholder or employee of a professional service corporation."); § 25–3–103.7(3), C.R.S.2005 ("Nothing in this section shall be construed to allow any hospital which employs a physician to limit or otherwise exercise control over the physician's independent professional judgment . . . ."); § 25–29–101.

### C.

■ Plaintiffs acknowledge that *Russell* was legislatively overruled, but they maintain that the supreme court's analysis of the former version of § 12–36–134 in *Russell* is still instructive and, when applied here, compels the conclusion that the Health Authority Act creates a statutory exception to the corporate practice of medicine doctrine. We disagree.

■ A statute does not alter the common law except to the extent the statute expressly so provides. *Preston v. Dupont,* 35 P.3d 433 (Colo.2001); *Robinson v. Kerr,* 144 Colo. 48, 355 P.2d 117 (1960). "[S]tatutes in derogation of the common law must be strictly construed, so that if the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication." *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1076 (Colo.1992); *see also Vaughan v. McMinn,* 945 P.2d 404 (Colo.1997).

In 1994, eight years before *Russell* was decided, the legislature established Denver Health as a separate corporate and political subdivision of the state for the stated purpose of maintaining the economic viability and quality of the Denver health system. Unlike the previous version of § 12–36–134, which the court construed in *Russell,* § 25–29–104(1)(a) and (b), C.R.S.2005, do not suggest that Denver Health was created for the purpose of "conducting the practice of medicine." Section 25–29–104(1)(a) of the Health Authority Act states that its mission is to "[p]rovide access to quality preventative, acute, and chronic health care."

Contrary to plaintiffs' contention, providing "access" to health case is considerably different from actually providing such care. Health care is provided by individuals who are licensed to practice medicine, not by Denver Health or other hospitals. *See* § 12–36–106, C.R.S.2005 (defining the practice of medicine); § 12–36–107, C.R.S.2005 (stating qualifications for licensure); *Austin v. Litvak,* 682 P.2d 41 (Colo.1984)(the diagnosis and treatment of human illness constitute the practice of medicine).

The court in *Russell* concluded that the former version of § 12–36–134 authorized professional corporations, which consisted solely of physicians, to control the independent medical judgment of their employees. However, the Health Authority Act does not give Denver Health similar authority. To the contrary, the Health Authority Act—read in conjunction with § 25–3–103.7(3)—expresses a clear intent by the legislature to preclude hospitals from interfering with the independent professional judgment of their employees. *Bagby v. Sch. Dist. No. 1,* 186 Colo. 428, 528 P.2d 1299 (1974)(related statutory provisions from separate acts must be read together so as to avoid rendering one statute meaningless).

Section 25–3–103.7(3), which governs employment of physicians by hospitals, provides:

> Nothing in this section shall be construed to allow any hospital which employs a physician to limit or otherwise exercise control over the physician's independent professional judgment concerning the practice of medicine or diagnosis or treatment or to require physicians to refer exclusively to the hospital or the hospital's employed physicians.

Plaintiffs also maintain that the references to medical malpractice liability and insurance coverage in §§ 25–29–105(3)(d) and 25–29–106(2), C.R.S.2005, of the Health Authority Act create an inference that the legislature intended that Denver Health practice medicine. However, those provisions indemnify Denver Health for liability in connection with malpractice claims based on its own negligence, *Krane v. Saint Anthony Hosp. Sys.,* 738 P.2d 75 (Colo.App.1987), and the negli-

gent acts of its nurses and other employees, as opposed to the acts of licensed physicians working for Denver Health. *Bernardi v. Cmty. Hosp. Ass'n,* 166 Colo. 280, 443 P.2d 708 (1968).

In summary, we conclude the Health Authority Act does not create a statutory exception to the corporate practice of medicine doctrine and that a contrary conclusion would defeat the expressed intent of the legislature to preserve the corporate practice of medicine in Colorado. *See* §§ 12–36–117(1)(m)(II), 12–36–134(1)(b), (f) & (7)(a), 13–64–202(4)(c), 13–64–403(12)(a), C.R.S. 2005; Colo. Sess. Laws 2003, ch. 240 at 1598–601.

We further conclude Denver Health is not explicitly authorized or required to practice medicine, and because it cannot control the independent medical judgment of its employees, the trial court correctly dismissed plaintiffs' respondeat superior claim against Denver Health.

Given our conclusion, we need not address plaintiffs' additional contentions.

### III.

An award of attorney fees is mandatory when a trial court dismisses an action under C.R.C.P. 12(b). Section 13–17–201; *Barnett v. Denver Publ'g Co.,* 36 P.3d 145 (Colo.App. 2001). A party who successfully defends such a dismissal order is also entitled to the reasonable attorney fees incurred on appeal. *Wilson v. Meyer,* 126 P.3d 276 (Colo.App. 2005); *Henderson v. Bear,* 968 P.2d 144 (Colo.App.1998). Accordingly, we remand the case to the trial court to determine the amount of reasonable attorney fees incurred by Denver Health in this appeal and to award such fees.

The order is affirmed, and the case is remanded for an award to Denver Health of the attorney fees it incurred on appeal.

Judge GRAHAM and Judge CARPARELLI concur.