24CA1256 Whitt v Colorado Retina 01-29-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1256
City and County of Denver District Court No. 22CV33294
Honorable Andrew J. Luxen, Judge

---

Yvonne Whitt,

Plaintiff-Appellee and Cross-Appellant,

v.

Colorado Retina Associates, PLLC,

Defendant-Appellant and Cross-Appellee,

and

David Johnson, MD; Brian Joondeph, MD; Curtis Hagedorn, MD; and Mimi Liu, MD,

Defendants and Cross-Appellees.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE PAWAR
Gomez and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

---

Leventhal Puga Braley P.C., Jim Leventhal, Nathaniel E. Deakins, Jed Greenblatt, Robert S. Peck, Denver, Colorado, for Plaintiff-Appellee and Cross-Appellant

Hershey Decker Drake, PLLC, C. Todd Drake, Lone Tree, Colorado, for Defendant-Appellant and Cross-Appellee and Defendants and Cross-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    In this negligence action, plaintiff, Yvonne Whitt, sued a health care corporation and the individual doctors involved in her care after she lost her eye following eye surgery.  A jury found in favor of Whitt on one of her claims against the corporation, defendant Colorado Retina Associates, PLLC (CRA), and in favor of the individual doctors, defendants Dr. David Johnson, Dr. Brian Joondeph, Dr. Curtis Hagedorn, and Dr. Mimi Liu, on the claims against them.  CRA appeals the judgment against it, and Whitt cross-appeals the judgment in favor of the individual doctors.  We reverse the judgment against CRA and affirm the judgment in favor of the doctors.

## I.    Background

¶ 2    Whitt underwent surgery at CRA to address floaters in her left eye.  The day after surgery, Whitt had an in-person post-op follow up with Dr. Joondeph, one of the doctors associated with CRA.  Later that evening, Whitt called CRA several times reporting decreased vision in her eye.  The parties dispute whether she also reported worsening pain — a symptom of infection that all parties agree should be addressed immediately.

¶ 3     When Whitt called, she spoke with Curtis Brobst, a CRA triage technician.  Brobst told her she likely had bleeding in the eye, a common post-operative condition.  Brobst also reached out to one of CRA's on-call doctors, Dr. Liu, who suggested it was safe for Whitt to be seen the following day.  Brobst scheduled Whitt to see a doctor the next morning.

¶ 4     Whitt developed a serious infection and saw three other doctors for follow-up treatment.  She ultimately lost her eye several months later.  She brought negligence claims against the four doctors who treated her, based on their failure to timely evaluate and diagnose the infection.  She also brought two negligence claims against CRA — one for vicarious liability related to Brobst's conduct and one for direct negligence.

¶ 5     The case proceeded to trial, where a jury rejected Whitt's vicarious liability claim against CRA as well as her negligence claims against the individual doctors.  The jury found CRA liable for direct negligence, however, and awarded Whitt $902,126.00 in damages.

¶ 6     CRA appeals, arguing it was entitled to a directed verdict on Whitt's direct negligence claim as a matter of law because the

corporate practice of medicine doctrine prohibits a corporation from interfering with — or being held liable for — a doctor's independent medical judgment. Whitt cross-appeals the judgment in favor of the individual doctors, arguing the trial court's evidentiary errors unfairly skewed the jury's verdict in their favor.

¶ 7 We conclude that CRA was entitled to a directed verdict on Whitt's direct negligence claim. We disagree with Whitt's arguments on cross-appeal. We therefore reverse the judgment in part, affirm it in part, and remand for entry of a directed verdict.[1]

## II. Directed Verdict

### A. Standard of Review and Governing Law

¶ 8 The corporate practice of medicine doctrine provides that a corporation cannot practice medicine. *Est. of Harper v. Denv. Health & Hosp. Auth.*, 140 P.3d 273, 275 (Colo. App. 2006). As a result, a corporation may not supervise physicians, perform medical services, or otherwise interfere with a physician's independent medical judgment. *Id.*; *see Smith v. Surgery Ctr. at Lone Tree, LLC*,

---

[1] Whitt does not appeal the judgment entered in favor of CRA on her negligence claim based on vicarious liability. Accordingly, that portion of the judgment is undisturbed.

2020 COA 145M, ¶ 19. Likewise, a corporation may not be held liable for lapses in a physician's professional judgment. *Smith*, ¶ 19. "The doctrine thus shields corporations from vicarious liability for the negligent acts of their physician employees." *Est. of Harper*, 140 P.3d at 275.

¶ 9 To prevail on a negligence claim, a plaintiff must show that (1) the defendant owed her a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered injury; and (4) the cause of that injury was the defendant's conduct. *Smith*, ¶ 9.

¶ 10 We review a trial court's denial of a motion for directed verdict de novo. *Id.* at ¶ 8.

### B. Discussion

¶ 11 As discussed, Whitt brought two separate negligence claims against CRA — one for vicarious liability and one for direct negligence. The unsuccessful vicarious liability claim is not at issue on appeal. Nevertheless, we begin by explaining the difference between these two theories of liability.

¶ 12 A claim for vicarious liability asserts that an employer is liable for a tort, such as negligence, committed by an employee within the scope of employment. *See Stokes v. Denv. Newspaper Agency, LLP,*

4

159 P.3d 691, 693 (Colo. App. 2006).  Direct negligence, by contrast, asserts that an entity — in this case, a corporation — is *itself* liable for negligent conduct.  *See Brown v. Long Romero*, 2021 CO 67, ¶ 22 (in this context, a direct negligence claim might include allegations of negligent hiring, training, or supervision or other acts that constitute negligence and cause the plaintiff's injuries).

¶ 13     With this distinction in mind, we note that the jury rejected Whitt's vicarious liability claim.  That is, it concluded that CRA should not be held liable for Brobst's conduct.  Therefore, to the extent Whitt argues that she presented a viable direct negligence claim based on Brobst's or another employee's failure to return her calls quickly or accurately relay or apply the information she provided, we disagree.  Whitt's direct negligence claim cannot be based on what Brobst (or another employee) did or did not do. *See Settle v. Basinger*, 2013 COA 18, ¶ 28 (to prove a direct tort, as opposed to one based on vicarious liability, "it must be shown that the [employer] had a duty and personally breached that duty, not merely that the . . . employee had and breached a duty").  Concluding otherwise would erase the boundary between direct and vicarious liability.  And, in any event, the jury's verdict on the

vicarious liability claim indicates it did not believe Brobst's conduct was negligent.

¶ 14     We further agree with CRA that Whitt's direct negligence claim, as it relates to the doctors' actions or failure to act, is barred by the corporate practice of medicine doctrine.  Whitt acknowledges that Brobst consulted with Dr. Liu and Dr. Liu determined, based on the information she received, that Whitt could be seen the following morning.  But Whitt argues that CRA was required to provide additional access to medical care — including an in-person diagnosis, a direct telephone conversation with a doctor, or a second opinion regarding whether she required immediate attention.  We conclude CRA had no such duty.

¶ 15     Under the corporate practice of medicine doctrine, a corporation cannot require a doctor to see and evaluate a patient — whether in person or over the phone.  *See Est. of Harper*, 140 P.3d at 277 (the practice of medicine includes the "diagnosis and treatment of human illness" (citing *Austin v. Litvak*, 682 P.2d 41, (Colo. 1984))).  And it cannot interfere with a doctor's independent medical determination that a patient need not be seen immediately, even if that determination is negligent.  *See id.* at 275 (the doctrine

shields a corporation from liability even if the doctor is negligent). While Whitt attempts to frame her claim as one of failure to provide "access," we see no distinction between requiring Dr. Liu or another doctor to see her emergently and intervening with Dr. Liu's determination that Whitt could be seen in the morning.

¶ 16    Whitt relies on *Estate of Harper* and *United Blood Services v. Quintana*, 827 P.2d 509, 524 (Colo. 1992), to argue that CRA's triage policy created a duty to ensure patients with signs of infection be seen right away. We are not persuaded. *See Est. of Harper*, 140 P.3d at 275 (to the contrary, even a statute including provision of access to healthcare as part of a corporation's mission did not create an exception to the corporate practice of medicine doctrine); *see also Quintana*, 827 P.2d at 523 (applying a professional standard of care because blood bank was in the business of providing a "medical service," not based on its engagement in the practice of medicine).

¶ 17    Likewise, Whitt's allegation that CRA was liable for failing to train its staff, establish policies and procedures for returning calls quickly, or otherwise "have a system in place" to ensure that she was evaluated and treated emergently does not save her claim. Any

corporate policy or system directing a doctor's care rather than deferring to their independent exercise of medical judgment is barred by the corporate practice of medicine doctrine. Because Whitt's direct negligence claim is not legally viable, CRA is entitled to a directed verdict.

## III.    Whitt's Cross-Appeal

¶ 18    On cross-appeal, Whitt challenges the judgment in favor of the individual doctors, arguing that the court erred by admitting undisclosed impeachment evidence, admitting cumulative expert testimony, and preventing her from testifying about text messages she sent after surgery. We are not persuaded by these arguments.

### A.    Standards of Review and Reversal

¶ 19    We review a trial court's evidentiary rulings and imposition of discovery sanctions for an abuse of discretion. *See Settle*, ¶ 64; *Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 702 (Colo. 2009). A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *Pinkstaff*, 211 P.3d at 702. We do not reverse unless the error "substantially influenced the outcome of the case or impaired the basic fairness of the trial itself."

*Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 30 (quoting *CORE Elec. Coop. v. Freund Invs., LLC*, 2022 OA 63, ¶ 41).

### B. Undisclosed Impeachment Evidence

¶ 20 Whitt first argues the trial court reversibly erred by admitting undisclosed evidence that her expert witness, Dr. Chalam, was previously subject to two administrative complaints involving similar conduct to that alleged in this case. We disagree.

¶ 21 While Whitt argues this evidence was inadmissible under CRE 608(b) and CRE 403, she makes no attempt, other than a conclusory statement, to demonstrate prejudice — i.e., how the court's admission of the challenged evidence affected her substantial rights.[2] *See* C.A.R. 28(a)(7)(B) (an opening brief must include "a clear and concise discussion of the grounds upon which the party relies in seeking a reversal"). Because she has not sufficiently explained why any error is reversible, we reject her claim as undeveloped. *See Barnett v. Elite Props. of Am., Inc.*, 252

---

[2] In her opening brief, Whitt asserts only that the court's error in admitting the undisclosed evidence "powerfully led the jury to discount Dr. Chalam's testimony and thus render a decision on an improper basis." But she does not indicate how the brief reference to this evidence cast doubt on the jury's verdict, nor does she offer any developed response to CRA's harmlessness argument on reply.

P.3d 14, 19 (Colo. App. 2010) (we need not consider arguments presented without development as to "why any such alleged error requires reversal").

¶ 22    In any event, we conclude that any error was harmless. Dr. Chalam's cross-examination about his administrative complaints was brief — just six of approximately sixty-three pages of cross-examination; Dr. Chalam explained in his testimony that he did not admit any wrongdoing; and the defense did not mention the complaints in closing argument.  Moreover, the record shows that this portion of his cross-examination was inconsequential compared to other aspects of his cross-examination challenging his credibility.  For example, Dr. Chalam testified that a surgical wound like Whitt's should be closed by sutures, but, on cross-examination, he admitted that he previously published a letter opining that a lack of suture material may reduce the risk of infection.  He was also cross-examined about an American Academy of Ophthalmology publication that suggested patients with symptoms like Whitt's did not necessarily benefit from surgery, contrary to his testimony that surgery should have been offered to improve her condition.  *See Locke v. Vanderark*, 843 P.2d 27, 32 (Colo. App. 1992) (improperly

admitted evidence of *unrelated* litigation nevertheless harmless under substantially similar circumstances).  For these reasons, Whitt is not entitled to relief on this claim.

### C.    Cumulative Expert Testimony

¶ 23    Whitt next asserts the trial court abused its discretion and violated the case management order by allowing two defense-retained expert witnesses and each defendant doctor to testify that the defendants met the standard of care in treating her.  Again, we disagree.

¶ 24    The case management order provided only that the defense did not anticipate calling more than one *retained* expert per subject and provided that the parties would confer if additional expert witnesses became necessary.  Defendants disclosed their expert witnesses — two retained experts (one on general ophthalmology and another on the subspecialty of vitreoretinal medicine) and the four nonretained defendant doctors — and Whitt did not object.  We see no abuse of discretion in the court's management of trial.  *See Jackson v. Unocal Corp.*, 262 P.3d 874, 882 n.5 (Colo. 2011).

¶ 25    We further conclude that the trial court properly overruled Whitt's objection to cumulative expert testimony.  Whitt argues

each doctor testified to the same thing and the jury was inundated with expert opinions from the defense, while she was limited in her presentation of the issue. Despite Whitt's arguments, however, each doctor, as a party to the lawsuit, was entitled to testify in their own defense, including testimony that they believed their conduct met the standard of care. While their testimony overlapped, it was related to their individual interactions with Whitt and resulting treatment decisions. Because this testimony was "decidedly different in character and impact," *People v. Genrich*, 2019 COA 132M, ¶ 117 (Berger, J., specially concurring), the trial court properly concluded it was not needlessly cumulative. We further assume the jury understood and followed the court's instruction that "[t]he weight of evidence is not necessarily determined by the number of witnesses testifying to a particular fact." *See People v. Licona-Ortega*, 2022 COA 27, ¶ 91.

### D. Exclusion of Evidence Under C.R.C.P. 37

¶ 26 Finally, we see no abuse of discretion in the trial court's exclusion of evidence that Whitt told people she was in pain the day after surgery as a sanction for her last-minute disclosure.

## 1.    Applicable Law

¶ 27    A party must disclose evidence before trial and, if necessary, supplement any incomplete disclosures.  C.R.C.P. 26(a), (e).  If a party fails to disclose evidence or supplement their disclosures, the undisclosed evidence will not be admitted at trial unless the failure to disclose was either substantially justified or harmless.  C.R.C.P. 37(c); *see also Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 978 (Colo. 1999) (it is the nondisclosing party's burden to establish these elements).  A trial court has considerable discretion in determining whether the failure to disclose evidence was substantially justified or harmless.  *Todd*, 980 P.2d at 978.

## 2.    Additional Facts

¶ 28    During discovery, the defense requested Whitt produce all text messages related to her medical condition and claims.  Whitt produced no text messages in response.  Then, three days into trial and the night before her testimony, Whitt located three text messages to separate people in which she expressed that she was in pain.  She provided screenshots of the messages to her attorneys, who immediately sent them to the defense.  Outside the presence of the jury, Whitt's counsel sought to introduce this evidence.  He

13

argued that, while the court may be inclined to disallow the screenshots themselves, Whitt should be allowed to testify about her prior communications.

¶ 29    Defense counsel objected, arguing the defense was prejudiced by the late disclosure because he had no opportunity to question Whitt or any of the message recipients or investigate whether the messages were legitimate.

¶ 30    Quoting C.R.C.P. 37(c), the trial court concluded that Whitt's failure to disclose the evidence was not substantially justified or harmless. It therefore found the messages inadmissible and concluded that, while Whitt could testify about the fact that she was in pain, she could not testify to messaging other people to that effect.

### 3.    Discussion

¶ 31    Whitt argues that because the evidence demonstrating she was in pain was highly relevant to the issues, preclusion was unwarranted. She asserts that, instead, the trial court should have remedied the harm caused by her nondisclosure by allowing defense counsel to interview her before she took the stand or by granting a short continuance.

¶ 32    Critically, however, Whitt did not request a continuance or alternative remedy before the trial court. To the contrary, her attorney appeared to concede that the court might be inclined to preclude the messages. Whitt made no response at all to defense counsel's argument that the defense would be significantly prejudiced by the inability to conduct a forensic analysis of her phone or to call the purported message recipients as witnesses. Under these circumstances, we conclude she failed to meet her burden to establish harmlessness under C.R.C.P. 37(c), despite being afforded an opportunity to do so.[3] *See Todd*, 980 P.2d at 978.

¶ 33    In her reply brief, Whitt also argues the trial court erred by failing to review the nonexhaustive factors described in *Todd* to help guide a court in applying C.R.C.P. 37(c). We do not consider arguments made for the first time in a reply brief. *Flagstaff Enters. Constr. Inc. v. Snow*, 908 P.2d 1183, 1185 (Colo. App. 1995). Nevertheless, we observe that the court's use of C.R.C.P. 37(c)'s

---

[3] Whitt does not challenge the court's finding that her failure to disclose the text messages was not substantially justified, so we do not review this element.

language suggests that it properly considered and applied the law. Therefore, we will not disturb its conclusion.

## IV.   Disposition

¶ 34    The judgment is reversed as to Whitt's direct negligence claim against CRA, and the case is remanded for entry of a directed verdict on that claim in CRA's favor.  In all other respects, the judgment is affirmed.

JUDGE GOMEZ and JUDGE BERNARD concur.